UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

V.                             NO. 04 10299 PBS – 11

HOWARD GREENBERG

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

### BACKGROUND

The defendant, Howard Greenberg, is charged with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §846.

This case is unique in that all of the evidence purporting to inculpate Mr. Greenberg in the alleged conspiracy is contained in intercepted communications between Mr. Greenberg and one member of the alleged conspiracy. There are no surveillance reports that would indicate Mr. Greenberg was redistributing the cocaine that he periodically purchased from the same individual. There is no evidence of Mr. Greenberg having any contact or even knowledge of any of the other individuals indicted as members of the conspiracy. In fact, the recorded conversations of Mr. Greenberg attempting to and purchasing cocaine clearly indicate that Mr. Greenberg was a cocaine addict with a serious habit and was purchasing for his own use.

While the indictment charges that Mr. Greenberg entered into a conspiracy with a large number of people to engage in massive cocaine distribution, all of the evidence that the government intends to produce against Mr. Greenberg establishes that there existed a buyer-seller relationship, without more between Mr. Greenberg and one member of the alleged conspiracy.

**THE GOVERNMENT'S EVIDENCE ESTABLISHES ONLY A
BUYER-SELLER RELATIONSHIP AND THAT THE DEFENDANT
BOUGHT FOR HIS OWN USE AND NOT REDISTRIBUTION**

Proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy. See United States v. Flores, 149 F.3d 1272, 1277 (10th Cir. 1998). Under 21 U.S.C. §846, the government must prove that the defendant entered into an agreement with one or more persons, the object of which agreement was to commit an act made unlawful by the federal narcotics laws. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir.1998); United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir.1990).

Under the statute, 21 U.S.C. § 846, it is incumbent upon the government to establish that the defendant agreed with the co-defendant, at least tacitly, to commit the substantive crime - cocaine distribution, which it is alleged in the indictment, constituted the object of their agreement, and that he thereafter participated in the conspiracy knowingly and voluntarily. See United States v. Echeverri, 982 F.2d 675, 679 (1st Cir. 1993); United States v. David, 940 F.2d 722, 735 (1st Cir. 1991),. The government's evidence does not satisfy those criteria.   In United States v. Moran, 984 F.2d 1299,(1st Cir. 1993), the Court recognized that a buyer-seller relationship is an insufficient predicate for a finding that the buyer and the seller are guilty as coconspirators. See also United States v. Mancari, 875 F.2d 103, 105 (7th Cir. 1989) (holding that the sale of drugs is inadequate, without additional evidence, to support a finding of conspiracy to distribute drugs to others because the seller could reasonably believe that such purchases are intended for the buyer's personal use).

2

Knowledge and intent are at the core of the issue. Thus, the question in such a case is whether the evidence surrounding the transaction(s) is sufficient to allow a fairminded jury to find beyond a reasonable doubt that A knew that B was reselling the drugs, and intended to facilitate the resales. See id.

What distinguishes a conspiracy from its substantive predicate offense is not just the presence of any agreement, but an agreement with the same joint criminal objective, here the joint objective of distributing drugs in furtherance of the objectives of the conspiracy and not a mere buyer-seller relationship. United States v. Lechuga, 994 F.2d 346, 349 (7th Cir.1993).

This joint objective is missing where the conspiracy is based simply on an agreement between a buyer and a seller for the sale of drugs. Although the parties to the sales agreement may both agree to commit a crime, they do not have the joint criminal objective of distributing drugs

As stated above, In order to establish the existence of a conspiracy under 21 U.S.C. sec. 846, the government must prove that the defendant entered into an agreement with one or more persons, the object of which agreement was to commit an act made unlawful by the federal narcotics laws. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir.1998); United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir.1990).

The mere agreement of one person to buy what another agrees to sell, as in this case, standing alone, can not support a conspiracy conviction. For example,

> The relationship of buyer and seller absent any prior or
> contemporaneous understanding beyond the mere sales
> agreement does not prove a conspiracy to sell, receive, barter or
> dispose of stolen property although both parties know of the

3

stolen character of the goods.  In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell.  There is no joint objective.

<u>United States v. Solomon</u>, 686 F.2d 863, 876 (11th Cir.1982).

When the sale of some commodity, such as illegal drugs, is the substantive crime, the sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is needed for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself. <u>United States v. Lechuga</u>, 994 F.2d 346, 349 (7th Cir.1993) (*en banc*).

This indictment charges the typical drug distribution scenario, involving a large-volume seller, several mid-level distributors, and multiple street-level dealers, to the extent that an agreement can be proven as to each participant, it must be proven that all share the common goal of maximizing the cash returns of the business through the distribution of the drugs.  <u>United States v. Hess</u>, 691 F.2d 984, 988 (11th Cir.1982). When parties are charged with agreeing to distribute drugs, evidence that the parties understood their transactions to do no more than support <u>the buyer's personal drug habit is antithetical to a finding of conspiracy</u>.  See <u>Lechuga</u>, 994 F.2d at 348-49.  In <u>United States v. Brown</u>, 872 F.2d 385 (11th Cir.1989), the Court reversed a defendant's conviction for conspiracy to distribute cocaine (and conspiracy to possess with intent to distribute cocaine) despite evidence showing that on a number of occasions the defendant purchased cocaine, either from "four to six grams or from six to eight grams." The defendant was known to his supplier as a "cocaine user," and <u>there was no evidence that the defendant turned around and sold this cocaine</u> or performed any errands or collections for his supplier or otherwise assisted the ongoing "business."

4

The Court stated that "the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement" and that these transactions revealed nothing more than isolated purchases for personal consumption, we held the evidence insufficient to infer the defendant's knowledge of, and intent to join, the existing conspiracy." *Id*. at 391 (quoting United States v. Bascaro, 742 F.2d 1335, 1359 (11th Cir.1984)).

The same result obtains where the defendant purchases a quantity of an illegal drug to share with another person. In United States v. Hardy, 895 F.2d 1331 (11th Cir.1990), the Court overturned a defendant's conviction for conspiracy to distribute cocaine where the evidence showed that the defendant "helped [another] purchase an eighth of an ounce of cocaine for their joint personal use." *Id*. at 1334. The Court held that the purchase and joint use of a small quantity of the drugs was "an insufficient basis for the inference that [the defendant] intended to distribute cocaine or entered into an agreement to do so." *Id*. Nor the defendant's "transfer of a small amount of cocaine to a guest in his home" altered this conclusion. *Id*. at 1335.

In this case even if there was evidence that Greenberg shared the cocaine with other cocaine addicts , friends of members of his household (there is no such evidence) such activity falls within the boundaries demarcated by these cases. This is merely a variant of the standard buyer-seller relationship.

In this case all of the government's evidence shows no more than that Mr. Greenberg "purchased" the drugs from for his own personal consumption. This evidence falls short of proving a joint criminal objective between Greenberg and any of the defendants to distribute drugs to third parties.

5

If the evidence only shows a buy-sell relationship, the fact that the sales are repeated, without more, does not support an inference that the buyer and seller have the same joint criminal objective to distribute drugs.  See Toler, 144 F.3d at 1426 ("[T]he government must prove the conspiracy it charged in the indictment rather than some other conspiracy.").

A conviction for conspiracy requires the government to show:  (1) two or more persons including the defendant, agreed to violate the law, (2) the defendant knew the essential objective of the conspiracy; (3) the defendant knowingly and voluntarily became part of the conspiracy; and (4) the alleged co-conspirators were interdependent.  United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir. 1996).  At best, the evidence in this case shows only a buyer-seller.  Again, proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy.  Flores, 149 F.3d 1272, 1277 (10th Cir. 1998).

As stated in Ivy, "the purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." Ivy, 83 F.3d at 1285-86.  The recordings provided defendant in discovery, and all reports, clearly shows that Greenberg was (a) heavily addicted to cocaine and (b) he was a buyer not a distributor who sold cocaine for redistribution.  In other words Greenberg was a mere consumer, and did not purchase cocaine in order to sell it to others.   In, United States v. Mims, 92 F.3d 461 (7th Cir. 1996), the defendants' conspiracy convictions were reversed because an erroneous buyer-seller instruction made it possible for the jury to convict two defendants merely

6

upon a showing that one bought cocaine from the other with knowledge that the other was in the drug business. The jury was not required to find an agreement between the two beyond the purchases.  If this case were to proceed to trial on this evidence the defendant could only be found guilty if the jury disregarded the law as to the buyer-seller exception.

### ASSUMING ARGUENDO THAT THE EVIDENCE ESTABLISHES MORE THAN A BUYER-SELLER RELATIONSHIP EXISTED THERE IS INSUFFICIENT EVIDENCE TO INCLUDE GREENBERG IN THE CONSPIRACY CHARGED IN THE <u>INDICTMENT</u>

Neither mere association and activity with a conspirator, nor knowledge of the existence of the conspiracy, is sufficient to prove one's involvement in the conspiracy. <u>United States v. Basurto</u>, 497 F.2d 781, 793 (9th Cir. 1976). "A meeting of the minds must be demonstrated." <u>United States v. Kenny</u>, 645 F.2d 1323, 1335 (9th Cir. 1981)."To join a conspiracy, then, is to join an agreement, rather than a group. It follows that to be a conspirator you must know of the agreement, and must intend to join it." <u>United States v. Townsend</u>, 924 F.2d 1385, 1390 (7th Cir. 1991).

A conspirator must agree to direct his conduct toward the realization of a criminal

objective, and must individually and consciously intend the realization of that objective. <u>Id.</u>

In this case, the evidence supplied the defendant establishes that Greenberg dealt only with one of the co-defendant's and had no knowledge of the others nor their "business". At best, his participation, if he is more than a user, is in what is commonly known as a "wheel conspiracy," where "the pattern was 'that of separate spokes meeting at a

7

common center.' " Kotteakos v. United States, 328 U.S. 750, 755 (1946). But as the Seventh Circuit observed in Townsend, "The fact that we can squeeze a group into a hypothetical organizational chart says little about whether a single agreement exists between the members of the group." 924 F.2d at 1392. The organizational construct does not "eliminate the need to inquire directly into whether the defendants had a mutual interest in achieving the goal of the conspiracy." *Id*.

For a wheel conspiracy to exist, the spokes of the wheel "must have been aware of each other and must do something in furtherance of a single, illegal enterprise…. Otherwise, the conspiracy lacks the rim of the wheel to enclose the spokes." United States v. Levine, 546 F.2d 658, 663 (5th Cir. 1977). As held in, U.S. v. Santiago, 83 F.3d 20, 23 (1st Cir. 1996) whether a true conspiracy exists turns on whether the seller knew that the buyer was reselling the drugs and intended to facilitate those resales. Santiago, 83 F.3d at 23-24. Therefore, knowledge and intent are the touchstones for sufficiently proving a conspiracy. To "rim" the wheel, each alleged conspirator must know or have reason to know of the scope of the conspiracy, and must have "reason to believe that [his] own benefits were dependent upon the success of the entire venture." United States v. Koskoff, 585 F.2d 378, 380 (9thCir. 1978).

Applying these principles to the facts of the instant case, it is clear that the government has no evidence to "rim the wheel." As far as the participation of the defendant Greenberg, it can not prove that Greenberg was part of a larger scheme to distribute all of the groups' cocaine.

No "meeting of the minds" between Greenberg and any members of the conspiracy can be inferred from the facts adduced at trial. These named conspirators

8

were not engaged in a joint enterprise with Greenberg and he did not have a mutual interest in the success of the drug distribution operation. It could not have mattered to Greenberg, a customer, or any of the other customers how many other customers the group had, how much cocaine he had to distribute, how much the others were purchasing or what they realized in profits from their drug sales.

Again, the Court's observation in <u>Townsend</u> is particularly apt:

> We cannot then, reasonably assume that everyone with whom a drug dealer does business benefits, directly or indirectly, from his other drug deals. In fact, any inference should probably run in the other direction. There is—hard though it may be to believe—a finite supply of drugs. Those in the market to sell or buy large quantities (for distribution) are just as likely, if not more, to be competitors as collaborators.
> 924 F.2d at 1393.

Not only did Greenberg not benefit from the group having many other customers, but the success of the groups operation did not depend to any substantial degree on Greenberg's participation.

The situation here was much like that in <u>Kotteakos v. United States</u>, 328 U.S. 750 (1946), where an individual named Brown submitted fraudulent loan applications in behalf of eight separate groups of individuals. The Court determined that each group engaged in a separate conspiracy with Brown. 328 U.S. at 755. The Supreme Court explained its conclusion in a later decision: Each loan was an end in itself, separate from all others, although all were alike in having similar objects. Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's

9

loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme. See Blumenthal v. United States, 332 U.S. 539, 558 (1947).

In this case if Greenberg were involved in a conspiracy to distribute, which the evidence belies, there were multiple conspiracies and they were equally distinct and disconnected. Thus, no juror could reasonably infer that Greenberg "consciously intended" to obtain and redistribute cocaine for the benefit of the "group". There is nothing in the evidence from which one could infer that Greenberg even cared at all whether the group was able to unload all that he possessed. Greenberg was not a "soldier" in the alleged operation, distributing the conspirator's drugs at the latter's behest. Nor does the evidence reveal that Greenberg was at all involved in lining up other customers for the organization, or in facilitating the transactions between the organization and its other customers.

There is certainly nothing in the evidence to suggest that Greenberg knew the size of the operation.

To sustain a conspiracy conviction, there must be "more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern." Direct Sales Co. v. United States, 319 U.S. 703, 713(1943). There must be an agreement to accomplish a

common objective. That agreement did not exist here.

In, United States v. North, 900 F.2d 131, 134 (8th Cir. 1990) the Court concluded, on facts very similar to those in this case, that simple knowledge that the supplier supplies other persons is not enough, to include the defendant in the larger conspiracy. In Townsend, the Court likewise concluded that two persons (Taylor and

10

Townsend) who purchased from the same dealer (Marquez) drugs they intended to redistribute, had entered into separate conspiracies, rather than joining a single drug distribution conspiracy involving Marquez, his other customers and his suppliers. 924 F.2d at 1400-05.

In reaching that conclusion, the Court noted that the "government hasn't explained any link between Townsend and Taylor, other than the fact that both used Marquez as a source of drugs. Neither was a Marquez employee; neither distributed drugs at Marquez' behest." 924 F.2d at 1405.   The same could be said in this case about the relationship

between Greenberg, the one co-defendant and other customers.

These cases demonstrate that drug dealers who share a common source do not thereby become coconspirators, just as "thieves who dispose of their loot to a single receiver—a fence—do not by that fact alone become confederates." Kotteakos, *supra,* 328 U.S. at 755. The fact that each may be engaged in the same activity (drug dealing) is also not dispositive. "Drug dealers are no more likely to be confederates than are criminals who engage in disparate activities." Townsend*, supra*, 924 F.2d at 1393. Nor does one necessarily join an enterprise by making regular purchases from or sales to that enterprise: The mere purchase or sale of drugs (even in large quantities) does not demonstrate an agreement to join a drug distribution conspiracy "any more than a purchase of 100 tons of steel to build a skyscraper shows that the buyer has 'joined' the corporate enterprise of the manufacturer." Id. at 1394, quoting United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.), *cert denied*, 498 U.S. 876 (1990).

**CONCLUSION**

The Court should exercise its general supervisory power and dismiss Count One of the indictment so far as it applies to the defendant Howard Greenberg, in order to preserve the integrity of the judicial process.

*/s/ Roger Witkin*
Roger Witkin
6 Beacon Street, Suite l0l0
Boston, MA 02l08
Tel. 6l7 523 0027
Fax 6l7 523 2024
BBO No. 53l780

DATED:  January 6, 2006

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

V.   NO. 04 10299 PBS - 11

HOWARD GREENBERG

CERTIFICATE OF SERVICE

I hereby certify that on this day a courtesy true copy of the within document was served upon AUSA Neil J. Gallagher, Jr., United States Attorney's Office, 1 Courthouse Way, Suite 9200, Boston, MA 02210 and Robert Alba, Courtroom Clerk for Honorable Patti B. Saris, United States District Court, One Courthouse Way, Suite 2300, Boston, MA which was electronically filed this day.

        /s/ Roger Witkin
        Roger Witkin
        6 Beacon Street, Suite l0l0
        Boston, MA 02l08
        Tel. 6l7 523 0027
        Fax 6l7 523 2024
        BBO No. 53l780

DATE:  January 6, 2006