```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
                            )   CRIMINAL ACTION
     v.                     )
                            )   NO. 04-10299-11-PBS
HOWARD GREENBERG            )
                            )
                            )
```

## UNITED STATES' RESPONSE TO DEFENDANT GREENBERG'S MOTION TO DISMISS INDICTMENT

The United States respectfully submits that defendant's motion to dismiss the indictment should be denied. First, a motion to dismiss the indictment cannot be based on the allegation that there is insufficient evidence to support the charges. Second, as further described below, the evidence produced clearly establishes that defendant was more than a mere buyer of user quantities of cocaine and instead was actively engaged in the redistribution of cocaine.

### I. Relevant Factual Summary

On July 31, 2003, in furtherance of a federal drug investigation, DEA began intercepting wire communications over a cell phone used by JOSE ROSALES, a.k.a. "Tony" pursuant to a court authorized Title III wiretap. In August 2003, DEA began intercepting cellular telephone calls of ROSALES' associates, VALENTIN MARTINEZ and MANUEL GERMOSEN, a.k.a "Kelvin Madera," a.k.a. "Manolo." These wire interceptions revealed evidence of an ongoing cocaine distribution organization headed by VALENTIN MARTINEZ. MARTINEZ employed a number of runners, including JOSE

ROSALES and ROGELIO GARICA to deliver whole-sale quantities of cocaine to and collect drug proceeds from a number of individuals in the areas of Lynn, Peabody, and Revere.

One of the more frequent individuals who received whole-sale quantities of cocaine from this organization was defendant HOWARD GREENBERG. Based on intercepted phone calls between GREENBERG and JOSE ROSALES, GREENBERG regularly obtained whole-sale quantities of cocaine ranging from 125 grams, 62 grams, 28 grams (ounce), and 14 grams (half ounce). These intercepted calls also clearly indicated that GREENBERG was engaged in the business of selling cocaine to other individuals. Below are two examples.

During an intercepted call on August 8, 2003 (Call No. 335-TT#2), GREENBERG told ROSALES that he needed "14" (a half ounce of cocaine) and he needed it really fast, because this kid (a drug customer) was coming down from New Hampshire:

    ROSALES:  What do you need?

    HOWARD:  Uhm... I need fourteen (14), but I need it like really fast. This kid is coming down from New Hampshire.

During an intercepted call on January 27, 2004 (Call 656-TT#15), GREENBERG asked ROSALES for a "large amount" of cocaine for one of his "best clients." GREENBERG further stated that he had given this client a sample of cocaine earlier, and was doing this deal for only $200:

    HOWIE:  Listen, I got... one of my good clients, uh... needs, uh... a large amount. It's going to be real good. Can you help me out?

```
ROSALES:   What do you say?

HOWIE:     One of my... one of my best clients; right?

ROSALES:   Okay.

HOWIE:     Needs something real good... so can you give
           me like the top of the, you know the good
           stuff, like you just did?

ROSALES:   Wow!

HOWIE:     What?

ROSALES:   Yeah, but I don't have it right now; you
           know?

HOWIE:     What do you got?

ROSALES:   The same, the same what I give you this
           morning.

HOWIE:     Yeah, as long as it's like that.  That's okay
           because I gave him a sample of that; you
           know.

ROSALES:   Okay.

HOWIE:     He said he take it.  I'm just doing it for
           like two hundred (200) bucks, you know.

ROSALES:   Okay.

HOWIE:     Can you bring me a sixty-two (62) and make
           sure there's nothing else in it.  No powder
           nothing.

ROSALES:   All right.

HOWIE:     Thanks man.

ROSALES:   Uh... are you ready for that?

HOWIE:     Yeah.
```

On May 1, 2004, at around 3:00 p.m., law enforcement agents arrested GREENBERG at his residence in Revere at 677 Revere Beach Blvd pursuant to a federal arrest warrant.  Upon entry into the residence, agents caught GREENBERG in the bathroom flushing down

the toilet a substance which was later determined to be cocaine. After securing the residence, agents obtained a state search warrant from Chelsea District Court for the residence. During the execution of the search warrant, agents found a digital scale, a handwritten drug ledger, and several items which were consistent with the packaging and use of narcotics.

## II.  Argument

Defendant's basic argument that there is insufficient evidence to convict. Defendant first argues that there is insufficient evidence to convict because the evidence only establishes a buyer-seller relationship between the defendant and the conspiracy. Defendant next argues that there is insufficient evidence to establish his participation in the conspiracy. The motion should be denied for two reasons.

First, "a pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general issue." United States v. Ayarza-Garcia 819 F.2d 1043, *1048 (11th Cir. 1987); citing United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975); United States v. King, 581 F.2d 800, 802 (10th Cir.1978); see United States v. Alfonso, 143 F.3d 772, 777 (2d Cir. 1998)(a challenge to the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment). In this case, defendant's only argument that there is insufficient evidence to convict him on the indictment. No challenge has been made to validity to the indictment.

Rule 12(b) of the Federal Rules of Criminal Procedure, governing pretrial motions, provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."  "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged."  <u>United States v. Doe</u>, 63 F.3d 121, 125 (2d Cir.1995).  Rule 12 is not intended to authorize "speaking motions" through which the truth of the allegations in an indictment are challenged.  <u>United States v. Greater Syracuse Bd. of Realtors, Inc.</u>, 449 F.Supp. 887, 899 (N.D.N.Y.1978) (challenge to sufficiency of allegations of effect on interstate commerce in criminal antitrust case).

Second, defendant's factual assertions are incorrect.  Defendant was not a mere end-user purchasing quantities of cocaine for his own personal use.  Instead, defendant was purchasing whole-sale quantities (125 grams, 62 grams, 28 grams, 14 grams) for re-distribution.  As further described above, several intercepted calls clearly revealed that defendant was reselling the cocaine he received from ROSALES.  During an intercepted call on August 8, 2003, defendant asked ROSALES to hurry up because one of his customers was coming from New Hampshire to pickup cocaine from GREENBERG.  In another call on January 27, 2004, GREENBERG asked ROSALES for a "large amount" of cocaine for one of his "best clients" and told ROSALES that he

had already given (i.e., distributed, the object of the conspiracy) a sample of cocaine to his client.

Moreover, defendant's interpretation of the buyer-seller rule of conspiracy law is overly broad. "Depending on the surrounding circumstances, a buyer-seller relationship could, in some cases, be the very core of a drug distribution conspiracy." United States v. Innamorati, 996 F.2d 456, (1st Cir. 1993); See United States v. Moran, 984 F.2d 1299, 1302-04 (1st Cir. 1993). For this reason, courts that have approved the "buyer-seller" instruction have restricted its use to cases in which the evidence showed only a single or a very limited number of sales for personal use. See United States v. Canino, 949 F.2d 928, 941 (7th Cir.1991); United States v. Medina, 944 F.2d 60, 65-66 (2d Cir.1991). In this case, the evidence at trial will be more than just a handful of cocaine sales. Instead, the evidence at trial will establish an ongoing relationship among confederate drug dealers.

**Conclusion**

For the foregoing reasons, defendant's motion to dismiss the indictment should be denied.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

By:        /s/ Neil J. Gallagher, Jr.
              Neil J. Gallagher, Jr.
              Assistant U.S. Attorney
              One Courthouse Way
              Boston, MA
              (617) 748-3397

Date: January 21, 2006

**Certificate of Service**

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                    /s/ Neil J. Gallagher, Jr.
                                    Neil J. Gallagher, Jr.