UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

        v.                        INDICTMENT NO. 04-10299-PBS–11

HOWARD GREENBERG

### REVISED MEMORANDUM IS SUPPORT OF THE DEFENDANT'S REVISED MOTION TO DISMISS INDICTMENT[1]

Howard Greenberg (the "Defendant"), in the above-numbered Indictment and through Counsel, submits the following Revised Memorandum for this Court's consideration in connection with his Revised Motion to Dismiss the Indictment.

**Facts.**

The Defendant has been charged in the present Indictment with conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §846.

The charging document in this case may be unique in that, as far as he can ascertain, the Defendant is mentioned only twice – once in the heading and once among the long list of persons accused in the conspiracy Count. In that Count, there is no general conduct, criminal or otherwise,[2] imputed to the Defendant. Nor has he been named in connection with any overt act. Upon information and belief, *all* the evidence purporting to inculpate the Defendant in the accusation is contained in intercepted communications having occurred between the Defendant and a single member of the alleged conspiracy. There is not – nor will there be – any evidence that the Defendant had any contact or association with any other member of the conspiracy.

---

[1] This Revised Memorandum is filed in place of the Defendant's Original Memorandum. in support of a Motion to Dismiss. The original Motion has been revised to include one ground, not two. See ft 1 of the Revised Motion.
[2] Beyond the allegation itself.

There is no evidence that the Defendant even knew, or knew of, any of the other persons named in the Count. The recorded conversations reflect simply a one-on-one relationship between the Defendant and another individual, the sole end of which was the Defendant's purchase of illicit substances.

While Indictment charges that the Defendant entered into a conspiracy with a large number of people to engage in the widespread distribution of cocaine, the evidence the Government intends to produce against the Defendant would establish that there existed a buyer-seller relationship, without more, between the Defendant and *one* member of the alleged conspiracy.[3]

**Argument.**

"To join a conspiracy…is to join an agreement, rather than a group. It follows that to be a conspirator you must know of the agreement, and must intend to join it." United States v. Townsend, 924 F.2d 1385, 1390 (7th Cir. 1991).

Agreement is the essence of conspiracy – that, and a specific and joint criminal object in the minds of those who agree to act toward that goal. Membership in a conspiracy requires a knowing and willful participation in the activities of the conspiracy with knowledge of its unlawful ends. See, for example, United States v. Brown, 584 F.2d 252, 260 (8th Cir. 19780; United States v. Campbell, 985 F.2d 341, 344-345 (7th Cir. 1993); United States v. Rork, 981 F.2d 314, 316 (8th Cir. 1992). To act willfully means to act with knowledge of the criminal object of the conspiracy and not by accident or mistake, but with *specific intent of violating the law*. United States v. Pappathnasi, CR 03-10303 (D. Mass., February 28, 2005, trial day 18. p. 6, Wolf, J.).

To be culpable, an accused must – during the life of a conspiracy – know of its criminal object and deliberately join the agreement to effect that object. United States v. Falcone, 311 U.S. 205, 210 (1940); United States v. O'Campo, 973 F.2d 1056 (1st Cir. 1992). "A meeting of the minds must be demonstrated." United States v. Kenny, 645 F.2d 1323, 1335 (9th Cir. 1981).

Neither mere association and activity with a conspirator, nor knowledge of the existence of the conspiracy, is sufficient to prove one's involvement in the conspiracy. A conspirator must agree to direct his conduct toward the realization of a criminal objective, and must individually and consciously intend the realization of that objective. United States v. Basurto, 497 F.2d 781, 793 (9th Cir. 1976).

In the present case, the Defendant has an unusual advantage. He is in possession of *all* the evidence the Government can use against him. It will establish that he dealt only with one of the co-conspirators and had no knowledge of the others or their "business."

The type of conspiracy alleged in the charging document has commonly been known as a "wheel conspiracy," where "the pattern was 'that of separate spokes meeting at a common center.'" Kotteakos v. United States, 328 U.S. 750, 755 (1946). But as the Seventh Circuit observed in Townsend, *supra*, "The fact that we can squeeze a group into a hypothetical organizational chart says little about whether a single agreement exists between the members of the group." 924 F.2d at 1392. The organizational construct does not "eliminate the need to inquire directly into whether the defendants had a mutual interest in achieving the goal of the conspiracy." *Id*.

---

[3] The Defendant's purchases sustained a cocaine addiction of his own, but they were significant enough to warrant the inference that he may have been engaged in the sale of the drug as well. But whatever his post-purchase conduct was, it had nothing to do with the conspiracy.

3

For a wheel conspiracy to exist, the spokes of the wheel "must have been aware of each other and must do something in furtherance of a single, illegal enterprise… . Otherwise, the conspiracy lacks the rim of the wheel to enclose the spokes." United States v. Levine, 546 F.2d 658, 663 (5th Cir. 1977).  Therefore, knowledge of the conspiracy and its criminal object are the touchstones of proof.  To "rim" the wheel, each alleged conspirator must know or have reason to know of the scope of the conspiracy, and must have "reason to believe that [his] own benefits were dependent upon the success of the entire venture." United States v. Koskoff, 585 F.2d 378, 380 (9th Cir. 1978).

The *indicia* of criminal behavior contained in the conversations between the Defendant and the single other individual do not impute knowledge of the conspiracy to the Defendant, let alone any conspiratorial agreement or intent on his part.  The Defendant was simply not a part of the larger sphere.  The only "agreement" made by the Defendant was to pay a certain price for cocaine.

No "meeting of the minds" between the Defendant and any members of the conspiracy can be inferred from the evidence as it stands. The Defendant did not have an interest mutual with the alleged conspirators in the success of the drug distribution operation. Whether the alleged conspiracy succeeded at all was of no consequence to the Defendant.  His sole – and individual -- conduct, if proved, might support his culpability of some offensive behavior, but not conspiracy.

Again, the Court's observation in Townsend is particularly apt:

> We cannot then, reasonably assume that everyone
> with whom a drug dealer does business benefits,
> directly or indirectly, from his other drug deals. In fact,
> any inference should probably run in the other direction.

4

> There is—hard though it may be to believe—a finite supply of drugs. Those in the market to sell or buy large quantities (for distribution) are just as likely, if not more, to be competitors as collaborators.

924 F.2d at 1393.

The success – or lack there of – of the conspiracy neither benefited the Defendant nor hurt him.  Nor was the success of the conspiracy dependent on the Defendant's acts.  If there was a conspiracy as the Government alleges, its object was to distribute cocaine.  This means, *ipso facto*, that there would have to be persons to whom the cocaine was distributed.  Persons who were not part of the conspiracy.  The Defendant, although he has been charged, falls into the latter category – he was one of the end buyers to whom the conspiracy sought to distribute its contraband.

The facts in Kotteakos, *supra*, bear a similarity to those in the instant case.  In Kotteakos, one Brown submitted fraudulent loan applications in behalf of eight separate groups of persons. Rather than finding an overarching conspiracy, the Court determined that each group engaged in a separate conspiracy with Brown.  328 U.S. at 755.  The Supreme Court explained its conclusion in a later decision, Blumenthal v. United States, 332 U.S. 539, 558 (1947).

Each loan was an end in itself, separate from all others, although all were alike in having similar objects. Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme.  If the instant Defendant were involved in *any* conspiracy, it was a smaller conspiracy between him and the other party.  The Defendant, of course, does not concede

5

this; he maintains that the only conduct which could be proven in his case would be substantive. No rational juror could reasonably infer that the Defendant "consciously intended" to obtain and redistribute cocaine for the benefit of the "group."

The mere agreement of one person to buy what another agrees to sell, as in the case of the Defendant, standing alone, cannot support a conspiracy conviction. For example,

> The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy to sell, receive, barter or dispose of stolen property although both parties know of the stolen character of the goods. In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective.

United States v. Solomon, 686 F.2d 863, 876 (11th Cir.1982).

To sustain a conspiracy conviction, there must be "more than suspicion, more than knowledge, acquiescence, carelessness, indifference, lack of concern." Direct Sales Co. v. United States, 319 U.S. 703, 713 (1943). There must be an agreement to accomplish a common objective. Such an agreement – at least of the Defendant's part – did not exist. In United States v. North, 900 F.2d 131, 134 (8th Cir. 1990) the Court concluded, on facts very similar to those in this case, that simple knowledge that the supplier supplies other persons is not enough, to include the defendant in the larger conspiracy. In Townsend, the Court likewise concluded that two persons – Townsend and Taylor -- who purchased from the same dealer – Marquez -- drugs which they, in turn, intended to redistribute, had entered into separate conspiracies, rather than joining a single drug distribution conspiracy involving the principal, his other customers and his suppliers. 924 F.2d at 1400-05.

In reaching that conclusion, the Court noted that the "government hasn't explained any link between Townsend and Taylor, other than the fact that both used Marquez as a source of drugs. Neither was a Marquez employee; neither distributed drugs at Marquez' behest." 924 F.2d at 1405. The same could be said in this case about the relationship between the Defendant and the other party.

These cases demonstrate that drug dealers who share a common source do not thereby become coconspirators, just as "thieves who dispose of their loot to a single receiver—a fence—do not by that fact alone become confederates." Kotteakos, supra, 328 U.S. at 755. The fact that each may be engaged in the same activity (drug dealing) is also not dispositive. "Drug dealers are no more likely to be confederates than are criminals who engage in disparate activities." Townsend, supra, 924 F.2d at 1393. Nor does one necessarily join an enterprise by making regular purchases from or sales to that enterprise: The mere purchase or sale of drugs (even in large quantities) does not demonstrate an agreement to join a drug distribution conspiracy "any more than a purchase of 100 tons of steel to build a skyscraper shows that the buyer has 'joined' the corporate enterprise of the manufacturer." Id. at 1394, quoting United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.), certiorari denied, 498 U.S. 876 (1990).

Proof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy. See United States v. Flores, 149 F.3d 1272, 1277 (10th Cir. 1998). Under 21 U.S.C. §846, the government must prove that the defendant entered into an agreement with one or more persons, the object of which agreement was to commit an act made unlawful by the federal narcotics laws. See United States v. Toler, 144 F.3d 1423, 1426 (11th Cir.1998); United States v. Parrado, 911 F.2d 1567, 1570 (11th Cir.1990).

When the sale of some commodity, such as illegal drugs, is the substantive crime, the

7

sale agreement itself cannot be the conspiracy, for it has no separate criminal object. What is needed for conspiracy in such a case is an agreement to commit some other crime beyond the crime constituted by the agreement itself. United States v. Lechuga, 994 F.2d 346, 349 (7th Cir.1993) (*en banc*).

Here, the Government has only sales between the Defendant and the other party, no other *quantum* of proof elevating the Defendant's conduct to that of conspiracy.

Therefore, the Defendant asks this Court to dismiss the indictment against him.

### HEARING ON THIS ARGUMENT IS REQUESTED

Respectfully submitted,

HOWARD GREENBERG, Defendant,

By his Counsel:

*/s/ Roger Witkin*
ROGER WITKIN
6 Beacon Street, Suite l0l0
Boston, Massachusetts   02l08
Tel. 6l7 523 0027
Fax 6l7 523 2024
BBO No. 53l780

DATED:   April 21, 2006

8

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES

          v.                                      INDICTMENT NO. 04-10299-PBS–11

HOWARD GREENBERG

## CERTIFICATE OF SERVICE

    I, Roger Witkin, Counsel to the Accused in the above-numbered Indictment, certify that I have served the within *Revised Memorandum in Support of the Defendant's Revised Motion to Dismiss Indictment* upon

    AUSA Neil J. Gallagher, Jr.
    United States Attorney's Office
    1 Courthouse Way, Suite 9200
    Boston, Massachusetts   02210, and

    Robert Alba, Courtroom Clerk
    For Honorable Patti B. Saris
    United States District Court
    One Courthouse Way, Suite 2300
    Boston, Massachusetts   02210,

by electronic filing this 21st day of April 2006.

                                                      */s/ Roger Witkin*
                                                      ROGER WITKIN
                                                      6 Beacon Street, Suite l0l0
                                                      Boston, Massachusetts   02l08
                                                      Tel. 6l7 523 0027
                                                      Fax 6l7 523 2024
                                                      BBO No. 53l780

DATE:  April 21, 2006

Case 1:04-cr-10299-PBS    Document 362    Filed 04/21/2006    Page 10 of 10